UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
KELLER FOUNDATIONS, LLC, HAYWARD BAKER, :
INC., and KELLER GROUP, PLC., :
: 16 Civ. 6751 (PAE)
Plaintiffs, :
: OPINION & ORDER
-v- :
:
ZURICH AMERICAN INSURANCE COMPANY, :
:
Defendant. :
:
------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

This decision resolves a dispute over insurance coverage. Plaintiffs Keller Foundations, LLC ("Keller"), Hayward Baker, Inc. ("HBI"), and Keller Group, PLC. ("Keller Group") bring claims against defendant Zurich American Insurance Company ("Zurich") for breach of contract, and breach of the contractual and statutory implied covenants of good faith and fair dealing. The suit arises out of Zurich's 2013 settlement with a third party under an insurance policy agreement between the plaintiffs and Zurich. Plaintiffs claim that Zurich did not have the authority under the insurance policy to enter into the settlement agreement with the third party, and that Zurich unlawfully damaged plaintiffs by doing so. Zurich counters that it was permitted to settle with the third party under the policy, and that, in any event, its decision to do so did not violate plaintiffs' rights under the policy or harm them.

Zurich now moves to dismiss plaintiffs' Complaint for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Zurich's motion is granted, but without prejudice to plaintiffs' ability to bring an amended complaint or a new lawsuit against Zurich as the facts may merit.

## I. Background

### A. Factual Background[1]

#### 1. The Parties

Keller is a Delaware limited liability construction company that maintains its principal place of business in Hanover, Maryland. Dkt. 1 ("Complaint") ¶ 3.

HBI is a Delaware construction services corporation that maintains its principal place of business in Hanover, Maryland. *Id.* ¶ 4.

Keller Group is a public limited ground engineering company organized under the laws of the United Kingdom that maintains its principal place of business in London, England. *Id.* ¶ 5. Keller Group is the parent company of both Keller and HBI. *Id.* ¶ 6. It is also the parent of Capital Insurance Company ("Capital"), a "captive reinsurer"[2] which is wholly owned by Keller Group, *id.* ¶ 26, but which is not a party to this action.

Zurich is an insurance company organized under the laws of New York that maintains its principal place of business in Schaumburg, Illinois. *Id.* ¶ 7.

#### 2. The Policy

Zurich issued a commercial general liability policy, No. GLO 3373933-06, effective June 1, 2009 to June 1, 2010. *Id.* ¶ 20, Ex. A (the "Policy"). Construction companies Keller and HBI

---

[1] The facts related herein are drawn primarily from the plaintiffs' Complaint, and the attached exhibits. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). The Court accepts all factual allegations in the Complaint as true, drawing all reasonable inferences in plaintiffs' favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] A "captive reinsurer" is owned by an entity which, directly or indirectly, is a source of some or all of the risks reinsured.

were named insureds under the policy, but their parent, Keller Group, was not. *Id.* Under the terms of the Policy, Zurich was to provide insurance coverage to Keller, HBI, and other named insureds—as well as to certain additional insureds not specifically named in the Policy—for claims of property damage or bodily injury. *Id.* ¶¶ 20–22. Specifically, the Policy required Zurich to:

> [P]ay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

Policy at 51.

The Policy also stated that Zurich "may, at [Zurich's] discretion, investigate any "occurrence" and settle any claim or "suit" that may result. *Id.* The Policy provided limits of liability in the amount of $5 million per occurrence, and $5 million in the aggregate. *Id.* at 18.

### 3. The Reinsurance Agreement

A portion of Zurich's risk under the Policy was covered by a "captive reinsurance agreement" issued by Capital. Complaint ¶ 23; *id.*, Ex. B (the "Reinsurance Agreement").

The Reinsurance Agreement provided that Capital would reimburse £450,000 per loss on the Policy in excess of a £50,000 deductible. Complaint ¶ 25; Reinsurance Agreement at 1.

### 4. The Diaz/HBI Suit

In May 2009, HBI entered into a contract (the "Contract") with Diaz Fritz Isabel ("Diaz"), to serve as a subcontractor at the University Community Hospital Carrollwood Surgery/ICU expansion project in Tampa, Florida (the "Project"), where Diaz was a general contractor. Complaint ¶ 15. In August 2009, groundwater seeped into the existing portions of the hospital, causing damage to the Project. *Id.* ¶16. On August 5, 2011, Diaz sued HBI for breach of contract relating to the flood damage. HBI asserted counterclaims for money that it

3

claimed it was owed for its work as subcontractor. *See The Diaz/Fritz Group, Inc. (d/b/a/ Diaz Fritz Isabel) v. Hayward Baker, Inc.*, Case No. 11 09772, Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida (the "Diaz/HBI Decision"); Complaint ¶¶ 17–19.

### 5. The Diaz/Zurich Suit and the Settlement Agreement

On December 20, 2011, Diaz, through its counsel, made a demand by letter to Zurich for indemnity and defense, claiming to be an additional insured under the Policy, and, seeking coverage under the Policy for HBI's counterclaim against it in the Diaz/HBI Suit. *Id.* ¶¶ 28–29. On February 10, 2012, Zurich, through its counsel, replied by letter, denying Diaz additional insured coverage under the Policy. *Id.* ¶ 30.

On February 15, 2012, Diaz filed a lawsuit against Zurich. *The Diaz/Fritz Group, Inc. v. Zurich American Insurance Company*, No. 12 Civ. 716 (RAL) (EAJ), (M.D. Fla., filed Apr. 4, 2012) (the "Diaz/Zurich Suit"); Complaint ¶ 32. The Diaz/Zurich Suit was later removed to the United States District Court for the Middle District of Florida, Tampa Division. *Id.*; Diaz/Zurich Decision.

In the Diaz/Zurich Suit, Diaz alleged, *inter alia*, that it was entitled to additional insured coverage under the Policy with respect to the damages allegedly caused by HBI's breach of contract. As amended, Diaz's complaint, also brought a claim of bad faith against Zurich. *See* Complaint ¶¶ 33–34. Zurich filed a counterclaim seeking, *inter alia*, a declaration in Zurich's favor to the effect that Zurich had no duty under the Policy to defend or indemnify Diaz. *Id.* ¶ 35. Zurich moved for summary judgment on Diaz's counterclaim. The district court denied that motion. *See* Diaz/Zurich Decision.

The Diaz/Zurich suit was then referred for mediation. A settlement (the "Settlement Agreement") resulted, under which Zurich paid Diaz $450,000 in exchange for "full satisfaction

4

of all claims which were or which could have been brought by [Diaz] against [Zurich] in [the Diaz/Zurich Suit] and any ensuing bad faith action." Complaint ¶ 37. In the Settlement Agreement, Diaz acknowledged "that [HBI] intends to seek a dollar-for-dollar setoff of the money paid hereunder against claims made by [Diaz] against [HBI] in the litigation between them. [Diaz] retains the right to contest that and nothing in this agreement shall affect the claims and defenses of either party in the [Diaz/HBI Suit]." *Id.* ¶ 37.

After Zurich paid the settlement amount to Diaz, Zurich submitted a reinsurance claim for indemnification and legal expenses to Capital under the Reinsurance Agreement. Capital elected to pay Zurich on that reinsurance claim. *Id.* ¶¶ 42–43. As a result of that payment, plaintiffs here allege, Keller became obligated to pay a £50,000 deductible towards the payment from Capital to Zurich, and was later "allocated a greater share of premium payments with respect to the Policy." *Id.* ¶¶ 44–45.

**B.    Procedural History of this Case**

On August 26, 2016, plaintiffs filed the Complaint. Dkt. 1. It brings claims for breach of contract; breach of contractual duty of good faith and fair dealing; and statutory bad faith. Complaint ¶¶ 46–59. It seeks declaratory relief; money damages; and attorneys' fees and costs. *Id.* at ¶¶ 11–12.

On October 28, 2016, Zurich filed a motion to dismiss, Dkt. 14, and a memorandum of law, Dkt. 15 ("Def. Br."), and a declaration, Dkt. 16, in support. Zurich argues that it was at liberty under the Policy to settle with, and pay funds to, Diaz; that, as a matter of law, it did not breach the terms of the Policy by doing so; and that, in any event, it cannot be liable to plaintiffs for doing so. On December 2, 2016, plaintiffs filed a brief in opposition. Dkt. 16 ("Pl. Br.").

On December 23, 2016, Zurich filed a reply brief, Dkt. 22, ("Def. Reply Br."), and a declaration in further support of its motion to dismiss, Dkt. 23.

## II.     Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) (internal quotation marks omitted)). However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[R]ather, the complaint's *[f]actual* allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal quotation marks omitted) (emphasis in *Arista Records*). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

## III. Discussion

### A. Breach of Contract

Under Delaware law,[3] to establish a claim for breach of contract, a plaintiff must adequately allege: (1) the existence of an express or implied contract, (2) the breach of some obligation imposed by that contract, and (3) resulting damages. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

The Complaint alleges that by entering into the Settlement Agreement with Diaz, and then paying out funds to Diaz under that Agreement, Zurich was in breach of the Policy because the "claims for which Diaz sought coverage in the Diaz/Zurich suit were not covered under the Policy." Complaint ¶ 47. It alleges that Diaz's claim against Zurich was outside the scope of the Policy's coverage, because Diaz did not qualify as an additional insured under the Policy and because Diaz's claims against Zurich did not arise out of a claim covered by the Policy. *Id.* ¶ 48. Plaintiffs allege that as a "direct result" of this breach, "Keller has suffered, and continues to suffer, damages." *Id.* ¶ 49.

Zurich makes several arguments in response. First, as to Keller Group, Zurich argues that it lacks standing to bring a breach of contract claim, because it is not an insured under the Policy and was not an intended beneficiary of it. *See* Def. Br. at 9–11. Second, with regard to

---

[3] Both parties acknowledge, and the Court agrees, that Delaware substantive law applies here. *See* Complaint ¶¶ 11–14; Def. Br. at 6–14; *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 399 (S.D.N.Y. 2010) ("This Court must apply the choice of law rules of the state where it is located."); *Liberty Surplus Ins. Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 67 A.D.3d 420, 420–21 (N.Y. App. Div. 1st Dep't 2009) ("A contract of liability insurance is governed by the local law of the state which the parties understood was to be the principal location of the insured risk. Where the covered risks are spread over multiple states, courts will generally locate the risk in one state, namely, the state of the insured's domicile at the time the policy was issued, and a corporate insured's domicile is the state of its principal place of business.") (internal citations and quotation marks omitted).

7

Keller and HBI, who *were* insureds, Zurich argues that it did not breach any of its obligation to them under the Policy. Those obligations, Zurich notes, are as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

Policy at 51. Zurich argues that its decision to settle Diaz's claims against it did not breach either of these obligations. First, Zurich notes, there is no claim that it has ever been asked, let alone that it has refused, to repay "sums" for "damages" owed by Keller or HBI due to bodily injury or property damage covered by the Policy. Second, Zurich notes, there is no claim that it has refused to defend Keller or HBI against any suit seeking those damages. Thus, Zurich argues, on the facts pled, its settlement of Diaz's claims against it in the Diaz/Zurich Suit has had no effect on plaintiffs. In other words, Zurich argues, whether or not the settlement with Diaz and the ensuing payout was justified under the Policy—and Zurich argues that it was—Zurich has not, on the facts pled, breached any duty to the named insureds, Keller and HBI.

The Court agrees. The Court accordingly dismisses plaintiffs' breach of contract claims for failure to state a claim pursuant to Rule 12(b)(6).

First, as to Keller Group, it indeed lacks standing to sue under the Policy. Under Delaware law, if an allegedly injured party "is neither a named insured nor a third party beneficiary, it cannot recover from the liability insurer unless there has been an assignment of rights or the injured party is a judgment creditor of the insured." *Greater New York Mut. Ins. Co. v. Travelers Ins. Co.*, No. 10 Civ. 1107 (LPS), 2011 WL 4501207, at *2 (D. Del. Sept. 28, 2011). It follows that for Keller Group to have standing to sue for a claimed breach of the Policy it must either have been a named insured—which it was not—or a "third party beneficiary." For it to be a third-party beneficiary, the Policy must have "confer[ed] an intended benefit on [Keller

Group], and the conferral of such benefit must be a material part of the [Policy's] purpose." *Global Energy Fin. LLC v. Peabody Energy Corp.,* C.A. No. 10 Civ. 129 (RRC), 2010 WL 4056164, at *25 (Del. Super. Oct. 14, 2010). The Policy does not, however, mention Keller Group. And the Complaint does not allege that any party to the Policy assigned any of its rights to Keller Group, or that Keller Group is a judgment creditor of any named insured. Therefore, Keller Group lacks standing to sue for breach of the Policy and its claims of breach must be dismissed.

As to Keller and HBI, these plaintiffs have standing, but they fail to allege breach of Zurich's obligations to them under the Policy or any resulting harm. As noted, Zurich's contractual obligations to Keller and HBI as named insureds were twofold: (1) to repay "sums" for "damages" incurred due to bodily injury or property damage covered by the Policy, and (2) to defend against any suit seeking such damages. The Complaint does not allege any breach, to date, of those obligations. And plaintiffs have not identified any provision of the Policy that required Zurich to notify Keller or HBI of, or obtain their consent to, the settlement of claims by an alleged third-party insured (such as Diaz). On the contrary, as noted, the Policy gave Zurich broad discretion to settle claims. The Policy also did not require Zurich to resolve simultaneously all claims arising out of an incident or occurrence or, in settling, to negotiate setoffs as between insureds with potential claims against one another.

Plaintiffs make several arguments why Zurich breached a duty to them by settling with Diaz. Each is premised on the notion that Zurich's settlement with Diaz was outside of Zurich's discretionary settlement authority, either because Diaz was not a third-party beneficiary of the Policy or because Diaz's injuries did not arise out of an "occurrence" of "bodily injury" or

9

"property damage" as defined in the Policy. Pl. Br. at 9.[4] Even accepting this premise, however, plaintiffs' arguments are not persuasive.

First, plaintiffs argue that, by not obliging Diaz, as part of the settlement, to release its claims against the named insurers, Zurich breached its duty to defend HBI. *Id.* at 8. However, the Complaint does not allege that Zurich has in fact ceased to defend HBI in its litigation with Diaz. Nor does the Complaint allege that Zurich has retracted the scope of its defense of HBI in any way, or that Zurich has reduced the coverage available to HBI under the Policy on account of that settlement. Nor does the Complaint allege that, as a result of the settlement with Diaz, Zurich has imposed specific cost or contribution obligations on HBI that HBI otherwise would not have borne. On the present pleadings, plaintiffs' claim that the settlement with Diaz will impair HBI's defense or contract its scope of coverage is wholly conjectural.

Second, plaintiffs allege that, after Zurich paid $450,000 to Diaz, Capital, the captive reinsurer, elected to reimburse Zurich for that claim. Complaint ¶¶ 42–43. As a result, plaintiffs allege, they became obligated under the Captive Reinsurance Agreement to pay Capital a "GBP 50,000 deductible." Complaint ¶ 44. As to this point, plaintiffs' grievance is with Capital, not Zurich. Capital was at liberty to dispute whether Diaz's claims were within the coverage of the Policy, and on that ground to resist reimbursing Zurich the $450,000. On the pleadings, Capital appears not to have done so. Plaintiffs are at liberty now, of course, to resist paying *Capital* the deductible on the grounds that Capital had not been obliged to reimburse Zurich.

Third, plaintiffs allege that as a result of Zurich's payout to Diaz, Keller's premium payments have increased, Complaint ¶ 45, or "will increase." Pl. Br. at 9–10. This allegation is

---

[4] In so arguing, plaintiffs note that "[t]he Diaz/Zurich Suit did not contain any claims against Keller or HBI" and that neither was a party to the Diaz/Zurich Suit." *Id.* at 8–10.

10

too elusive to enable the Court to assess it. Plaintiffs may mean to allege that Zurich—on account of the settlement with Diaz—has increased the premiums due to it under the Policy. If so, it is possible that plaintiffs can state a claim for breach of contract, although plaintiffs would need to plead more clearly why terms of the Policy governing the calculation of premiums due were breached. But the pleadings are at least equally amenable to the construction that the premiums charged by Zurich are unchanged, and that Keller is paying more today because, as a result of Capital's decision to reimburse Zurich, a greater share of the premiums due now falls on Keller and a lesser share on Capital. *See* Complaint ¶ 27 (alleging that premiums are "charged to companies within Keller Group based on a multi-year loss history of claims paid out under the Captive Reinsurance Agreement on behalf of each company"). Without more clearly pled facts, the Court cannot determine whether Zurich in fact has raised its premiums as a result of its decision to settle with Diaz, and if so, whether that action is plausibly pled to have breached a Policy obligation.

The Court, therefore, pursuant to Rule 12(b)(6), grants the motion to dismiss the claims for breach of contract. However, the dismissal is without prejudice to the ability of plaintiffs to amend the Complaint, or to file a new one if later-arising facts support a claim of breach. Guided by this decision, plaintiffs conceivably may be able to allege more concretely a breach by Zurich of a specific contractual duty owed them under the Policy and to explain concretely how this breach has damaged them. Plaintiffs are also, of course, at liberty to bring claims against Capital, if factually merited. In authorizing an amended or new complaint, the Court does not have occasion to reach the issue whether, in fact, Diaz was properly treated by Zurich as a third-party insured entitled to coverage under the Policy.

11

B.  **Breach of Contractual Duty of Good Faith and Fair Dealing**

Under Delaware law, to establish a claim for breach of the implied duty of good faith and fair dealing, a plaintiff must adequately allege: (1) a specific implied contractual obligation; (2) a breach of that obligation by the defendant; and (3) resulting damages. *Blaustein v. Lord Baltimore Capital Corp.*, C.A. No. 6685-VCN, 2012 WL 2126111, at *5 (Del. Ch. Ct. May 31, 2012).

Delaware courts have held that an action for breach of the duty of good faith and fair dealing is a "limited and extraordinary legal remedy," and that terms are to be implied in a contract only where necessary to "handle developments or contractual gaps that the asserting party pleads neither party anticipated." *Nemec v. Shrader*, 991 A.2d 1120, 1125–26, 1128 (Del. 2010). A court should imply such terms only in instances where "the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected." *Id.* at 1126. Those expectations are assessed as "at the time of contracting." *Id.*

The Complaint here does not allege any "developments" or "contractual gaps" in the Policy that "neither party anticipated," so as to justify inferring additional terms. *Id.* at 1125–26. Rather, the Complaint simply disputes, factually, a particular fact-bound settlement decision made by Zurich, in the exercise of its broad settlement authority. Nor do the facts pled support the conclusion that, in settling with Diaz, Zurich "acted arbitrarily or unreasonably" so as to "frustrat[e] the fruits" of the Policy. *Id.* at 1126. Even assuming *arguendo* that the Diaz claims fell outside the scope of the Policy, the Complaint does not allege, for example, that Zurich has treated the settlement with Diaz as reducing the coverage available to plaintiffs to resolve claims under the Policy, an action that presumably could deny plaintiffs "fruits" of the Policy. The

12

Complaint thus fails to state a claim for the implied contractual duty of good faith and fair dealing. Plaintiffs are at liberty to attempt to re-plead such a claim, too, in an amended or new complaint.

C. **Breach of Statutory Duty of Good Faith and Fair Dealing**

Plaintiffs, finally, also bring statutory claims for bad faith under the Delaware Unfair Trade Practices Act, 18 Del. C. § 2303 (the "UTPA").[5] These claims must also be dismissed under Rule 12(b)(6) because the UTPA does not authorize a private right of action.

Plaintiffs' sole authority to support their claim of a private right of action is *Correa v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 618 F. Supp. 915 (D. Del. 1985), which held that the UTPA does not "preempt other methods of redressing unfair trade practices," *id.* at 926. But that decision did not find a freestanding private right of action *under the UTPA*. Indeed, the plaintiff there did not attempt to bring such an action. And ample Delaware case law finds against such a private right of action. *See, e.g., Brousseau v. Laccetti*, Civ. A. No. 9 Civ. 403 (JAP), 2009 WL 4015647, at *3 (D. Del. Nov. 16, 2009) ("[B]ecause there is no private cause of action permitted under UTPA, Plaintiff cannot maintain a bad faith claim against [defendants]."); *Johnson v. GEICO Cas. Co.*, 516 F. Supp. 2d 351, 360 (D. Del. 2007) ("After reviewing the applicable statutory language and case law, the Court concludes that the UPIB does not provide for a private cause of action.")

The Court therefore dismisses plaintiffs' UTPA claims for failure to state a claim.

---

[5] This statute is also sometimes called the Unfair Practices in the Insurance Business Act ("UPIB"), including by parties here. For simplicity, the Court refers to this statute as the UTPA.

13

## CONCLUSION

For the foregoing reasons, the Court dismisses the Complaint in its entirety for failure to state a claim. This dismissal is without prejudice to plaintiffs' right to re-plead claims against Zurich arising out of the facts and circumstances at issue, should facts now known or that later develop support such claims.

The Clerk of Court is thus respectfully directed to terminate the motion pending at Dkt. 14 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: May 4, 2017
New York, New York

14