UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                              :

KELLER FOUNDATIONS, LLC, HAYWARD BAKER,   :
INC., and KELLER GROUP, PLC.,                           :
                                                              :       16 Civ. 6751 (PAE)
                                Plaintiffs,     :
                                                               :       OPINION & ORDER
                      -v-                                        :
                                                               :
ZURICH AMERICAN INSURANCE COMPANY,      :
                                                               :
                                Defendant.    :
                                                                :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       Plaintiffs Keller Foundations, LLC ("Keller"), Hayward Baker, Inc. ("HBI"), and Keller Group, PLC ("Keller Group") bring claims against defendant Zurich American Insurance Company ("Zurich") for breach of contract and breach of the contractual and statutory implied covenants of good faith and fair dealing. The Court previously dismissed plaintiffs' complaint for failure to state a claim. The dismissal was without prejudice, and plaintiffs have since repleaded their claims. Zurich now moves again to dismiss plaintiffs' Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

       This suit arises out of Zurich's 2013 settlement with a third party under an insurance policy between plaintiffs and Zurich. Plaintiffs claim, as before, that Zurich did not have the authority under the insurance policy to enter into the settlement agreement with the third party, and that Zurich unlawfully damaged plaintiffs by doing so. Zurich counters that it was permitted to settle with the third party under the Policy, and that, in any event, its decision to do so did not violate plaintiffs' rights under the policy or harm them.

For the reasons that follow, Zurich's motion is granted, but without prejudice to plaintiffs' ability to bring an amended complaint or a new lawsuit against Zurich to the extent that factual developments postdating the Amended Complaint so justify.

## I. Background

### A. Factual Background[1]

#### 1. The Parties

Keller is a Delaware limited liability construction company that maintains its principal place of business in Hanover, Maryland. Dkt. 28 ("Amended Complaint" or "AC") ¶ 3.

HBI is a Delaware construction services corporation that maintains its principal place of business in Hanover, Maryland. *Id.* ¶ 4.

Keller Group is a public limited ground engineering company organized under the laws of the United Kingdom that maintains its principal place of business in London, England. *Id.* ¶ 5. Keller Group is the parent company of both Keller and HBI. *Id.* ¶ 6. It is also the parent of Capital Insurance Company ("Capital"), a "captive reinsurer"[2] that is fully funded by Keller Group, *id.* ¶ 28, but which is not a party to this action.

Zurich is an insurance company organized under the laws of New York that maintains its principal place of business in Schaumburg, Illinois. *Id.* ¶ 7.

---

[1] The facts related herein are drawn from plaintiffs' Amended Complaint and the attached exhibits. *See DiFolco v. MSNBC Cable LLC*, 662 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). The Court accepts all factual allegations in the Amended Complaint as true, drawing all reasonable inferences in plaintiffs' favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] A "captive reinsurer" is owned by an entity which, directly or indirectly, is a source of some or all of the risks reinsured.

### 2. The Policy

Zurich issued a commercial general liability policy, No. GLO 3373933–06, effective June 1, 2009 to June 1, 2010. *Id.* ¶ 22, Ex. A (the "Policy"). Construction companies Keller and HBI were named insureds under the policy, but their parent, Keller Group, was not. *Id.* ¶¶ 22–23. Under the terms of the Policy, Zurich was to provide insurance coverage to Keller, HBI, and other named insureds—as well as to certain additional insureds not specifically named in the Policy—for claims of property damage or bodily injury. *Id.* ¶¶ 22–24. Specifically, the Policy required Zurich to:

> [P]ay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

Policy at 51.

The Policy also stated that Zurich "may, at [Zurich's] discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result." *Id.* The Policy provided limits of liability in the amount of $5 million per occurrence, and $5 million in the aggregate. *Id.* at 18.

### 3. The Reinsurance Agreement

A portion of Zurich's risk under the Policy was covered by a "captive reinsurance agreement" issued by Capital. AC ¶ 25; *id.*, Ex. B (the "Reinsurance Agreement").

The Reinsurance Agreement provided that Capital would reimburse Zurich £450,000 per loss on the Policy in excess of a £50,000 deductible. AC ¶ 27; Reinsurance Agreement at 1.

### 4. The Diaz/HBI Suit

In May 2009, HBI entered into a contract (the "Contract") with Diaz Fritz Isabel ("Diaz"), to serve as a subcontractor at the University Community Hospital Carrollwood Surgery/ICU expansion project in Tampa, Florida (the "Project"), where Diaz was a general

3

contractor.  AC ¶ 15.  In August 2009, groundwater seeped into the existing portions of the hospital, causing damage to the Project.  *Id.* ¶ 16.  On August 5, 2011, Diaz sued HBI for breach of contract relating to the flood damage.  *Id.* ¶ 17.  HBI asserted counterclaims for money that it claimed it was owed for its work as subcontractor.  *See The Diaz/Fritz Group, Inc. (d/b/a/ Diaz Fritz Isabel) v. Hayward Baker, Inc.*, Case No. 11 09772, Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida (the "Diaz/HBI Suit"); AC ¶¶ 17–21.

### 5. The Diaz/Zurich Suit and the Settlement Agreement

On December 20, 2011, Diaz, through its counsel, made a demand by letter to Zurich for indemnity and defense, claiming to be an additional insured under the Policy.  AC ¶ 35.  On February 10, 2012, Zurich, through its counsel, replied by letter, denying Diaz additional insured coverage under the Policy.  *Id.* ¶ 36.

On February 15, 2012, Diaz filed a lawsuit against Zurich.  *See The Diaz/Fritz Group, Inc. v. Zurich American Insurance Company*, No. 12 Civ. 716 (RAL) (EAJ), (M.D. Fla., filed Apr. 4, 2012) (the "Diaz/Zurich Suit"); AC ¶ 37.  The Diaz/Zurich Suit was later removed to the United States District Court for the Middle District of Florida, Tampa Division.  *Id*. ¶ 38.

In the Diaz/Zurich Suit, Diaz alleged, *inter alia*, that it was entitled to additional insured coverage under the Policy with respect to the damages allegedly caused by HBI's breach of contract.  Zurich filed a counterclaim seeking, *inter alia*, a declaration in Zurich's favor to the effect that Zurich had no duty under the Policy to defend or indemnify Diaz.  *Id.* ¶ 43.  Diaz moved for summary judgment on Zurich's counterclaim.  The district court denied that motion.  *See* Opinion at 4.

The Diaz/Zurich suit was then referred for mediation.  A settlement (the "Settlement Agreement") resulted, under which Zurich paid Diaz $450,000 in exchange for "full satisfaction of all claims which were or which could have been brought by [Diaz] against [Zurich] in [the

4

Diaz/Zurich Suit] and any ensuing bad faith action." AC ¶ 45. In the Settlement Agreement, Diaz acknowledged "that [HBI] intends to seek a dollar-for-dollar setoff of the money paid hereunder against claims made by [Diaz] against [HBI] in the litigation between them. [Diaz] retains the right to contest that and nothing in this agreement shall affect the claims and defenses of either party in the [Diaz/HBI Suit]." *Id.*

After Zurich paid the settlement amount to Diaz, Zurich submitted a reinsurance claim for indemnification and legal expenses to Capital under the Reinsurance Agreement. Capital elected to pay Zurich on that reinsurance claim. *Id.* ¶¶ 52–54. As a result of that payment, plaintiffs here allege, Capital became obligated to, and did, reimburse Zurich for the settlement payment, and "had no discretion to decline reimbursement to Zurich." *Id.* ¶ 55–56. Because Capital is fully funded by Keller Group, plaintiffs further allege Keller Group then was obligated to reimburse Capital for the amount paid to Zurich, again with a lack of discretion to decline. *Id.* ¶ 57. Keller and HBI subsequently reimbursed Keller Group for a portion of the amounts reimbursed to Capital, and Keller further paid a £50,000 deductible towards the payment to Diaz. *Id*. ¶¶ 59–60.

### B. Procedural History of this Case

On August 26, 2016, plaintiffs filed the complaint, which challenged Zurich's decision to settle with Diaz. Dkt. 1 ("Complaint"). It brought claims for breach of contract, breach of contractual duty of good faith and fair dealing, and statutory bad faith. Complaint ¶¶ 46–59. It sought declaratory relief, money damages, and attorneys' fees and costs. *Id.* at 11–12.

On October 28, 2016, Zurich filed a motion to dismiss, Dkt. 14, and a memorandum of law, Dkt. 15, and declaration, Dkt. 16, in support. Zurich argued that it was at liberty under the Policy to settle with, and pay funds to, Diaz; that, as a matter of law, it did not breach the terms of the Policy by doing so; and that, in any event, it cannot be liable to plaintiffs for doing so. On

5

December 2, 2016, plaintiffs filed a brief in opposition. Dkt. 16. On December 23, 2016, Zurich filed a reply brief, Dkt. 22, and a declaration, Dkt. 23, in further support of its motion to dismiss.

On May 4, 2017, this Court granted Zurich's motion to dismiss the Complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. 26 ("Opinion"). The Court held, on the facts pled, that Zurich had not breached any specific contractual obligation to the named insureds; that Keller Group lacked standing to sue Zurich under the Policy; that the Complaint failed to allege the necessary elements of a claim for breach of the implied duty of good faith and fair dealing; and that there was no cause of action for statutory bad faith under the Delaware Unfair Trade Practices Act. *Id*. The Complaint was dismissed without prejudice to plaintiffs' right to re-plead claims against Zurich. *Id*. at 14.

On August 15, 2017, plaintiffs filed the Amended Complaint. *See* AC at 1. As before, the Amended Complaint challenges Zurich's decision to settle with Diaz. It again brings claims for breach of contract; breach of contractual duty of good faith and fair dealing; and statutory bad faith. *Id.* ¶¶ 61–88. The principal changes between the earlier and new complaints are that the Amended Complaint alleges more facts regarding the Captive Reinsurance Agreement's funding structure and plaintiffs' repayment obligations under it, *id.* ¶¶ 26–30, regarding the obligations imposed by the Diaz/Zurich settlement, *id.* ¶¶ 55–60, regarding HBI's demand for coverage under the Policy, *id.* ¶¶ 31–34, and regarding the harm plaintiffs suffered from the alleged breach, *id.* ¶¶ 71, 78; The Amended Complaint also brings separate breach of contract claims against Zurich for breach of contract with Keller and HBI, *id.* ¶¶ 61–70; identifies Keller Group as an intended third-party beneficiary of the Policy, *id.* ¶¶ 72–78; and alleges that plaintiffs could not reasonably have anticipated Zurich's settlement with Diaz, *id.* ¶ 82. Plaintiffs again seek declaratory relief, money damages, and attorneys' fees and costs. *Id.* at 15–16.

6

On September 29, 2017, Zurich filed a motion to dismiss the Amended Complaint, Dkt. 31, and a memorandum of law, Dkt. 32 ("Def. Br."), and declaration, Dkt. 33, in support. On October 27, 2017, plaintiffs filed a brief in opposition, Dkt. 34 ("Pl. Br."). On November 11, 2017, Zurich filed a reply brief, Dkt. 35 ("Def. Reply Br."), and a declaration, Dkt. 36, in further support of its motion to dismiss.

## II. Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a district court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) (internal quotation marks omitted)). However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[R]ather, the complaint's [f]actual allegations must be enough to raise a right to relief above the speculative level, i.e., enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal quotation marks omitted) (emphasis in *Arista Records*). A complaint is properly

dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

## III. Discussion

### A. Breach of Contract

As the Court noted in the Opinion, under Delaware law, to establish a claim for breach of contract, a plaintiff must adequately allege: (1) the existence of an express or implied contract; (2) the breach of some obligation imposed by that contract, and (3) resulting damages. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). The Amended Complaint alleges two separate breach of contract claims against Zurich, one brought on behalf of Keller and HBI and the second brought on behalf of Keller Group.

#### 1. Keller and HBI's Claim

Zurich owed two contractual obligations to Keller and HBI: (1) to defend against any suit seeking damages incurred due to bodily injury or property damage covered by the Policy, and (2) to repay "sums" for such "damages." In its earlier Opinion, the Court held that the Complaint did not allege a breach of either obligation. That is true, too, of the Amended Complaint. While the Opinion invited plaintiffs in a re-pleading to attempt "to allege more concretely a breach by Zurich of a specific contractual duty owed them under the Policy," Opinion at 11, the Amended Complaint does not do so.

As noted, there are two litigations in which Zurich could have breached its duty to Keller and HBI: the Diaz/HBI suit and the Diaz/Zurich suit.

The Court first considers the Diaz/HBI suit. The Amended Complaint does not adequately plead that Zurich breached either of its duties in that suit. It is undisputed that Zurich has paid, and continues to pay, for HBI's defense in the Diaz/HBI litigation. *Id.* ¶ 33. Nor is it pled that Zurich has breached its contractual duty to defend HBI. Further, the Diaz/HBI suit has

8

not concluded, *id.*, and under Delaware law, a party seeking indemnification may do so only after the underlying breach of contract claim has been "resolved with certainty." *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 198 (Del. 2009). Any duty to pay indemnity is not ripe. On the facts pled, Zurich simply has not yet had an opportunity to comply with, or breach, its duty to repay plaintiffs. Zurich's conduct in the Diaz/HBI litigation, as alleged, has been consonant with its obligations under the Policy. This conduct does not support a claim of breach of contract.

As for the Diaz/Zurich suit, no plaintiff in this action claims to have been a party to that suit, so Zurich cannot have violated a duty to defend them in the action. *See* Opinion at 10 n.4 (noting that plaintiffs' brief in opposition to motion to dismiss had stated that neither HBI nor Keller was a party to the Diaz/Zurich suit). Plaintiffs also do not allege that Zurich has failed to repay "sums" for "damages" incurred due to bodily injury or property damage covered by the Policy in connection with that suit or settlement.

To the contrary, plaintiffs' objection is to the fact that Zurich *paid* a claim—Diaz's. Plaintiffs argue that this settlement breached the Policy because it paid "costs out of the policy" which, plaintiffs claim, covered exclusively Diaz's claims against Zurich for bad faith. As an initial matter, this characterization of the settlement is demonstrably wrong. On its face, the settlement covered more than Diaz's bad faith claim—it covered "all claims which were or which could have been brought by [Diaz] against [Zurich] in [the Diaz/Zurich Suit] *and* any ensuing bad faith action." AC ¶ 45. In fact, there were no live bad faith claims against Zurich when the Diaz/Zurich suit was settled; the Florida court had denied Diaz's requests to amend his complaint to add claims of bad faith. See Dkt. 33-3 ("Baswell Decl. Ex. C"), Dkt. 33-4 ("Baswell Decl. Ex. D").

9

Drawing all reasonable inferences in Diaz's favor, the Court assumes that at least some of the settlement value was attributable to a potential bad faith claim by Diaz against Zurich. But even so, plaintiffs do not plausibly claim that the settlement with Diaz breached Zurich's duties to them. As the Court previously noted, while the Policy obliges Zurich to pay claims for bodily injury or property damage, it does not bar Zurich from settling other claims. On the contrary, the Policy gave Zurich broad discretion to settle any claim, Opinion at 3 (citing Policy at 51), and did not require Zurich "to notify Keller or HBI of, or obtain their consent to, the settlement of claims by an alleged third-party insured (such as Diaz)," *id.* at 9. Therefore, to the extent plaintiffs fault Zurich for not "ma[king them] aware of the Settlement Agreement until after it was fully executed," AC ¶ 50, or obtaining their "consent[]" or "ratifi[cation]," *id.* at ¶ 51, that conduct did not violate the Policy.

To be sure, had plaintiffs alleged that Zurich—on account of its settlement with Diaz—had denied them coverage under the Policy or limited a payout to them on a claim made under the Policy, Zurich's use of its settlement with Diaz in this fashion to abridge plaintiffs' rights under the Policy might have supported a claim of breach. But, as before, the Amended Complaint does not allege that Zurich took any such action to plaintiffs' detriment. Plaintiffs' conjecture that Zurich may one day treat the Diaz settlement as reducing the pool of "policy funds" available to settle other claims under Policy does not make out a present claim of a breach of a contractual duty owed to plaintiffs.

Plaintiffs separately note that Zurich submitted the Diaz settlement (including the portion attributable to payment on Diaz's bad faith claim) to Capital for reimbursement under a different agreement, the Captive Reinsurance Agreement. *See* AC ¶¶ 53, 55. And, plaintiffs allege, Capital paid that claim, net of a deductible, purportedly because the Captive Reinsurance

10

Agreement so required. *Id.* ¶ 55. But plaintiffs HBI and Keller were parties to the Policy, not to the Captive Reinsurance Agreement. Whether or not the Captive Reinsurance Agreement required Capital to pay Zurich the sums covered by Diaz settlement, Capital's payment was neither a breach of the Policy nor of HBI's and Keller's rights under the Policy. *See* Opinion at 10.

Plaintiffs allege that, as a result of Capital's obligation under the Captive Reinsurance Agreement to reimburse Zurich, Keller and HBI indirectly became required to pay money to Keller Group, causing each of them financial injury. Specifically, the Amended Complaint alleges, "[b]ecause Capital is fully funded by Keller Group, Keller Group was obligated to reimburse Capital for the amounts Capital reimbursed to Zurich," *id.* ¶ 57, and "[p]ursuant to their obligations, Keller and HBI each reimbursed Keller Group for a portion of the amounts Keller Group reimbursed to Capital," *id.* ¶ 59, and "[p]ursuant to its obligations, Keller also paid a GPB [sic] 50,000 deductible toward the settlement payment to Diaz," *id.* ¶ 60. But the obligations of Keller and HBI to reimburse Keller Group for its payments to Capital do not derive from the Policy. They derive from the Captive Reinsurance Agreement, *id.* ¶ 27, which requires Capital to reimburse Zurich, and from unstated sources (presumably agreements among the affiliated entities Capital, Keller Group, Keller, and HBI) that required Keller Group to reimburse Capital, *id.* ¶¶ 28–29, and Keller and HBI to reimburse Keller Group, *id.* ¶ 30.

To the extent Keller and HBI are aggrieved by this chain of events, their grievances do not arise under the Policy, but under the Captive Reinsurance Agreement, to which plaintiffs are not parties. And plaintiffs' grievances are ultimately not with Zurich, but with Capital, as the Court has recognized. *See* Opinion at 10. As the Court earlier explained: "Capital was at liberty to dispute whether Diaz's claims were within the coverage of the Policy, and on that ground to

11

resist reimbursing Zurich the $450,000. On the pleadings, Capital appears not to have done so." *Id.* As the Court further noted: "Plaintiffs are at liberty now, of course, to resist paying *Capital* the deductible on the grounds that Capital had not been obligated to reimburse Zurich." *Id.* The Reinsurance Agreement, which is cognizable on this motion, gave Capital the ability to resist Zurich's request for reimbursement on the grounds that Zurich's payment to Diaz (in whole or part) fell outside the Policy. Under it, Capital was obliged to repay Zurich for "payments made by the Company, *provided they are within the terms, conditions and limits of this Agreement*," Reinsurance Agreement 4, Clause 6 (emphasis added), and the Agreement in turn applies only to "liability assumed by the Company under the terms and conditions of the Original Policies," *id.* at 3, Clause 2. If Capital believed Zurich had wantonly paid money under the Settlement Agreement, *i.e.*, that its payment to Diaz was outside of the Policy's coverage, Capital thus was at liberty under the Reinsurance Agreement to dispute its duty to reimburse Zurich on the ground that Zurich's payment to Diaz was not "within the terms, conditions and limits" of the Policy.[3] On the facts pled, Capital's election to pay Zurich was the ultimate source of Keller Group's (and derivatively, Keller's and HBI's) repayment obligations. AC ¶¶ 26–30. Had Capital contested Zurich's request for reimbursement, Keller and HBI might not have undertaken their obligation to repay Keller Group. It was thus not an error on Zurich's part that resulted in Keller's and HBI's damages. It was Capital's decision to treat this payment as falling within the

---

[3] Not only did the text of the Reinsurance Agreement give Capital the right to resist Zurich's request for reimbursement—under principles of English law (which governs the Reinsurance Agreement, *see* Reinsurance Agreement 5, clause 15), reinsurers are bound to repay under a clause such as Clause 2 of the Reinsurance Agreement only when a settlement is covered by the underlying insurance policy. *See* Def. Rep. Br. at 5 (citing *Hill v. Mercantile & Gen. Reins. Co.* [1996] 1 W.L.R. 1239 (HL) 1251 (Eng.)).

scope of the Reinsurance Agreement which resulted—under agreements to which Zurich was not a party—in financial consequences to Keller and HBI.

The Court, therefore grants the motion to dismiss Keller and HBI's breach of contract claims.

### 2. Keller Group

This Court previously held that Keller Group lacked standing to sue under the Policy. The Court noted that there are four circumstances under Delaware law in which a party may recover from an insurer under the Policy, but that the Complaint alleged none: (1) the party is a named insured party; (2) the party is a "third-party beneficiary;" (3) there has been an assignment of rights from an insured party to the party seeking to sue; or (4) the party is a judgment creditor of an insured party. Opinion at 8.

In the Amended Complaint, plaintiffs do not allege that Keller Group was a named insured party, that there was an assignment of rights, or that Keller Group is a judgment creditor of a named insured party. The Amended Complaint does, however, allege that "Keller Group is an intended third-party beneficiary of the Policy." AC ¶ 77. As the Court has noted, under Delaware law, for a party to be a third-party beneficiary of an insurance policy, the policy must have "conferred an intended benefit" on the beneficiary, with such conferral being a "material part" of the Policy's purpose. *Global Energy Fin. LLC v. Peabody Energy Corp.*, No. 10 Civ. 129 (RRC), 2010 WL 4056164, at *25 (Del. Super. Oct. 14, 2010) (cited in Opinion at 8–9). Delaware law requires the contracting parties to have "intended the third-party beneficiary to benefit from the contract." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 196 (3d Cir. 2001). Therefore, for Keller to be a third-party beneficiary under the Policy, as the Court noted, the Policy must have specifically been intended

to benefit Keller Group, not simply some third-party beneficiary, and that benefit must have been a material part of the contract's purpose. Opinion at 9.

The Amended Complaint attempts to clear this hurdle, but it does so by summarily pleading the requirements for third-party beneficiary status, without any supporting factual averments. Thus, the Amended Complaint states, conclusorily, that "Zurich knew, or should have known" that a material part of Keller's motivation in purchasing the policy was to benefit "Keller's parent company Keller Group." AC ¶¶ 74–76. It does not state, however, how or why Zurich knew or should have known of this purpose on Keller's or HDI's part. The one fact that is pled—that Keller Group is Keller's parent company (AC ¶ 6) and therefore implicitly would benefit if Keller performed better financially—is insufficient to establish Keller Group as a third-party beneficiary. *See, e.g.*, *E.I. DuPont*, 269 F.3d at 196–97 ("Although DuPont as the parent of DPC would certainly benefit from the success of DPC, DuPont was not an intended third-party beneficiary of the Agreement any more than any parent who expects to benefit from the success of the business ventures of its subsidiary."); *Eastman Chem. Co. v. AlphaPet Inc.*, No. 09-971-LPS-CJB, 2011 WL 6004079, at *8 (D. Del. Nov. 4, 2011) (holding that the mere possibility of a benefit by virtue of parenthood does not address the necessary question of whether the parties intended to confer some benefit to the parent company).

Plaintiffs do not make any other factual claims supporting a claim that the parties to the Policy intended to benefit Keller Group. And on the facts pled, the Court cannot draw the inference that Zurich knew that benefitting Keller Group, which notably was not one of the Policy's 39 named insureds, Policy at 29, was a material purpose for the Policy. The bare allegations that Zurich knew or should have known Keller Group was an intended beneficiary is insufficient to establish a plausible claim for relief. *See Iqbal*, 556 U.S. at 678 ("Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In their brief, plaintiffs make a new argument why Keller Group purportedly has standing as a third-party beneficiary to sue Zurich under the Policy. The Policy, plaintiffs note, states that a limited liability company's members are also insureds. Policy at 41. But this theory fails as a basis for finding Keller Group an intended third-party beneficiary. The Amended Complaint nowhere pleads that Keller Group was a "member" of Keller Foundation LLC. It pleads only, as background, that "Keller and HBI are owned by parent company Keller Group." AC ¶ 6. And even if an entity's ownership of and membership in an LLC were treated as equivalent, the Amended Complaint, in claiming that Keller Group was an intended third-party beneficiary, *see id.* ¶¶ 73–77, does not allege that Keller Group had rights under the Policy provision making members of LLCs insureds. The Amended Complaint nowhere cites that provision. Instead, the Amended Complaint's theory of third-party beneficiary status is exclusively the *ipse dixit* that Zurich knew or should have known that Keller's subjective motive in purchasing the Policy was to benefit the Keller Group (an entity the Policy nowhere mentions).

Finally, even if the facts pled were adequate to support that Keller Group was an intended beneficiary of the Policy, the Amended Complaint nowhere pleads, as required by law, that the benefit conferred to Keller Group was intended by the parties to the Policy "as a gift or in satisfaction of a pre-existing obligation." *Comrie v. Enterasys Networks, Inc.*, No. CIV. A. 19254, 2004 WL 293337, at *3 (Del. Ch. Feb. 17, 2004).

For all these reasons, plaintiffs' new theory fails to support the claim that Keller Group was an intended third-party beneficiary of the Policy.

For avoidance of doubt, to the extent that plaintiffs now imply that Keller Group was, as a result of its ownership status of Keller, itself an insured, that theory would also fail to secure it relief under the Policy on the facts pled. The Policy covers general liability. But the Amended Complaint does not claim that Keller Group—treating it *arguendo* as an insured—experienced either for "bodily injury" or "property damage." AC ¶ 24 (quoting Policy). Instead, plaintiffs' theory why Zurich's settlement with Diaz harmed Keller Group is that Keller Group was contractually obliged to cover certain losses pursuant to an agreement (the Captive Reinsurance Agreement) with a non-party reinsurer, Capital. *Id.* ¶¶ 27–29. But plaintiffs have not pointed to any part of the Policy that required Zurich to compensate an insured for such a contractual liability.

Therefore, the Court holds, Keller Group lacks standing to sue Zurich under the Policy, and the claims must be dismissed.

### B. Breach of the Contractual Duty of Good Faith and Fair Dealing

Plaintiffs also bring claims based the contractual duty of good faith and fair dealing. As the Court earlier noted, under Delaware law, a duty of good faith and fair dealing should only be implied where "the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected." Opinion at 12 (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010)). The Court earlier observed that the Complaint could satisfy this standard with allegations of any "developments" or "contractual gaps" in the Policy that "neither party anticipated" and by showing that Zurich, in the face of those gaps, "acted arbitrarily or unreasonably" so as to "frustrat[e] the fruits" of the Policy. *Id.* at 12 (internal citations omitted).

16

The Amended Complaint, however, makes no claims of any "contractual gaps" in the Policy. Instead, it simply alleges that Zurich acted unreasonably and in a manner that plaintiffs could not have reasonably expected in settling the Diaz/Zurich Suit. AC ¶¶ 81–82. The Amended Complaint admits that the Policy gives Zurich discretion to settle claims for any "occurrence," but it disputes that Diaz's claims of bad faith against Zurich, to the extent that these formed a basis for the settlement agreement, were an "occurrence." *Id*. ¶¶ 67–68. But Zurich's settlement of this claim against it was neither facially unreasonable nor outside plaintiffs' realistic anticipation. Whether or not it might reasonably have been expected that Zurich would pursue reimbursement under the Reinsurance Agreement for such a claim—a separate question which implicated the interests of Capital, which reimbursed Zurich, and not plaintiffs, who were not a party to that agreement—it was reasonable for plaintiffs to expect that a rational economic actor, such as Zurich, might settle, on reasonable terms, a claim of bad faith. *See Nemec*, 991 A.2d at 1126 (court must evaluate claimed breach of implied covenant of good faith based on parties' reasonable expectations at time of contracting).

In any event, to be actionable as a breach of the implied covenant of good faith and fair dealing, Zurich's "unreasonable" behavior would still have had to have frustrated the "fruits of the bargain" with plaintiffs. *See Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005). An insured party has a cause of action for breach of the implied covenant of good faith "when the insurer refuses to honor its obligations under the policy and clearly lacks justification for doing so." *Enrique v. State Farm Mut. Auto. Ins. Co.*, 142 A.3d 506, 511 (Del. 2016). As noted earlier, Zurich's obligations to the insured plaintiffs were not dishonored here. Although the Amended Complaint broadly complains that Keller and HBI were damaged by Zurich's settlement with Diaz, AC ¶ 83, it fails to plead any concrete damage to either (whether by a

17

refusal to pay on a claim or to defend them against a suit seeking damages). For this reason, too, the Amended Complaint fails to state a claim for breach of the implied contractual duty of good faith and fair dealing.

### C. Breach of Statutory Duty of Good Faith and Fair Dealing

The Amended Complaint reprises in identical terms its predecessor's claim for statutory bad faith under the Delaware Unfair Trade Practices Act, 18 Del. C. § 2303 ("UTPA"). *Correa v. Pennsylvania Mfrs. Ins. Co.*, 618 F. Supp. 915 (D. Del. 1985), which the Court firmly held inapposite, remains plaintiffs' sole authority to support their claim. Plaintiffs supply no reason for the Court to reconsider its holding that the UTPA does not authorize a private right of action. The Court therefore again dismisses the UTPA claim for failure to state a claim.

### D. Declaratory Judgment

Finally, the Court declines to entertain plaintiffs' claim for declaratory relief. The Court did not expressly address this claim in its previous opinion.

District courts may adjudicate a declaratory judgment action only where an "actual controversy" exists. *See* 28 U.S.C. § 2201(a). "[The] party seeking a declaratory judgment bears the burden of proving that the district court has jurisdiction." *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001). "That the liability may be contingent does not necessarily defeat jurisdiction." *Assoc. Indemnity Corp. v. Fairchild Inds., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992); *see also E.R. Squibb*, 241 F.3d at 177 (quoting *Associated Indemnity*). However, "[w]here liability is contingent, courts in this circuit traditionally examine the 'practical likelihood' that there will be some type of settlement or judgment against the insurer." *Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 262 (S.D.N.Y. 2010).

A classic example arises in the insurance context: A claim for declaratory relief is ripe when a judicial declaration would clarify a dispute over whether an insurance settlement can count towards an annual insurance cap that is about to be reached. *Cf. Fed. Ins. Co.*, 758 F. Supp. 2d at 262. Here, however, plaintiffs have not made any allegations that would make such a claim ripe. Among other things, plaintiffs have not alleged that: (1) Zurich and plaintiffs actually dispute whether the Diaz settlement, to the extent it covers bad-faith claims that Diaz could have brought against Zurich, are covered by the Policy; (2) any harm will come to plaintiffs under the Policy if Zurich treats the Diaz settlement (in whole or in part) as falling within the Policy—*e.g.*, that there is a cap on payouts under the Policy that would be approached or crossed were the Diaz settlement treated as covered by the Policy; (3) such cap for the Policy year in question is likely to be reached; or (4) there are any claims on the Policy that plaintiffs have made or have any expectation of making. Plaintiffs' claims do not present any crystallized case or controversy meriting declaratory relief. The Court, therefore, will not entertain plaintiffs' claim for such relief.[4]

## CONCLUSION

For the foregoing reasons, the Court dismisses the Amended Complaint in its entirety for failure to state a claim. This dismissal is with prejudice to Keller's and HBI's right to re-plead claims against Zurich based on facts and circumstances existing as of the date of the Amended

---

[4] For avoidance of doubt, to the extent that plaintiffs' claim for declaratory relief is retrospective in nature—*i.e.*, that it attempts to declare Zurich's past conduct a breach of contract—there is also no basis for relief. "Declaratory relief is intended to operate prospectively," *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Int'l Wire Grp., Inc.*, No. 02 CIV. 10338 (SAS), 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003); it is designed to clarify the parties' prospective rights and responsibilities under, for example, a contract. "There is no basis for declaratory relief where only past acts are involved." *Id.*; *accord John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, No. 11-CV-5453-CM, 2011 WL 5245192, at *4 (S.D.N.Y. Nov. 2, 2011).

Complaint. It is, however, without prejudice to (1) Keller Group's right to refile, as it has been dismissed for lack of standing, and (2) all plaintiffs' right to bring claims against Zurich based on later arising events (*e.g.*, a refusal by Zurich to pay claims under the Policy or to defend plaintiffs against claims covered by the Policy).

The Clerk of the Court is thus respectfully directed to terminate the motion pending at Dkt. 31 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: March 28, 2018
       New York, New York